[Cite as *Longo v. Longo*, 2014-Ohio-4880.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**GEAUGA COUNTY, OHIO**

| | | |
|---|---|---|
| CHARLES V. LONGO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-G-3175** |
| JOY E. LONGO, | : | |
| Defendant, | : | |
| (JEFFREY T. ORNDORFF, | : | |
| Appellee). | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 01 DC 000861.

Judgment: Affirmed.


*Charles V. Longo,* pro se, and *Matthew D. Greenwell,* Charles V. Longo, Co., L.P.A., 25550 Chagrin Boulevard, #320, Beachwood, OH 44122 (For Plaintiff-Appellant).

*Jeffrey T. Orndorff,* pro se, Jeffrey T. Orndorff Co., L.P.A., 117 South Street, P.O. Box 1137, Chardon, OH 44024 (Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Charles V. Longo, appeals from the judgment of the Geauga County Court of Common Pleas awarding appellee, Jeffrey T. Orndorff, fees for his services as guardian ad litem ("GAL") to appellant's children during the course of

custody proceedings involving appellant and his former wife, Joy E. Longo ("Joy"). For the reasons discussed in this opinion, we affirm.

{¶2} Appellant and his former wife were divorced on December 23, 2003. While custody proceedings were pending before the trial court, appellant moved the court to appoint a GAL for the Longo children. On January 28, 2009, the trial court appointed appellee GAL. The order of appointment stated appellee would be paid $125 per hour and further provided appellant would be responsible for 67% of appellee's fees and Joy would be responsible for 33%. The order required the parties to make their respective payments when bills were submitted by appellee. The record does not indicate either party objected to these terms.

{¶3} In August 2009, appellee submitted his preliminary written report, recommending termination of an existing shared parenting plan and proposed that sole custody be awarded to Joy. The record indicates that, after the report was filed, appellant became somewhat abrasive with appellee. After a hearing at which the report was apparently discussed, appellant approached appellee and admonished the GAL by alerting him he was "f _ _ _ _ _ _ with the wrong guy." Appellant ceased payment to appellee in early 2010.

{¶4} In March 2010, appellant filed a motion to remove appellee as GAL. On May 21, 2010, the magistrate issued his decision denying appellant's motion to remove the guardian ad litem. Appellant filed objections to the magistrate's decision. Thereafter, appellant filed a supplemental motion to remove the guardian ad litem. On October 15, 2010, the trial court denied the supplemental motion to remove guardian filed by appellant. In a second entry, dated October 15, 2010, the trial court overruled

2

appellant's objections to the magistrate's decision. Appellant appealed the trial court's judgment, but this court dismissed the appeal for lack of a final appealable order. *See Longo v. Longo*, 11th Dist. Geauga No. 2010-G-2998, 2011-Ohio-1297 ("*Longo I*").

{¶5} After litigating the custody issue for another two years, appellant and Joy reached a settlement of all outstanding motions in August 2012; the settlement was reduced to an agreed judgment, filed September 7, 2012, which resolved all remaining issues in the custody case. The record indicates Joy continued to pay the portion of the fees for which she was responsible throughout appellee's tenure as GAL. Appellant, however, still owed appellee fee payments pursuant to the order appointing him. Because the settlement did not set forth a provision for outstanding GAL fees, appellee filed a motion for guardian ad litem fees on August 21, 2013. At the time appellee submitted his bill, appellant allegedly owed appellee $8,212.35 in fees. Appellant contested the motion and, after appellant deposed appellee, a hearing was held on June 17, 2013.

{¶6} At the hearing, appellee submitted exhibits itemizing the time he spent as GAL and the fees he was requesting. Appellant did not contest the percentage allocation, the hourly rate, or the fact that he had not paid his purported share of the fees since January 2010. Instead, appellant primarily challenged appellee's effectiveness as guardian, the adequacy of appellee's billing procedures, and his purported failure to comply with various aspects of Sup.R. 48. After the hearing, the magistrate approved appellee's fees and costs in the amount of $8,966.73. The amount was premised upon the work in which appellee engaged while advocating for appellant's and Joy's children as well as the additional work he was required to do

3

preparing documents, at appellant's behest, for the post-motion deposition appellant conducted.

{¶7} Appellant subsequently filed multiple objections to the magistrate's decision. In particular, appellant argued: (1) the decision was against the manifest weight of the evidence; (2) the decision ignored the law set forth under Sup.R. 48; (3) the GAL admitted he did not keep records of his time; (4) the guardianship was terminated on September 19, 2012, but the magistrate awarded fees for time appellee billed after that date; (5) the magistrate ignored pleadings filed previously demonstrating appellee's purported incompetence, fraudulent behavior, and other misrepresentations of fact to the court; and (7) the time itemized on the bill did not accurately reflect the amount to which appellee was supposedly entitled.

{¶8} After reviewing and analyzing each argument, the trial court adopted the magistrate's decision in full. Appellant now appeals and assigns two errors for our review. His first assignment of error provides:

{¶9} "The trial court abused its discretion by refusing to remove the guardian ad litem where the uncontroverted and overwhelming evidence established that he failed to fulfill his statutory and common law duties."

{¶10} Initially, we point out that appellant's initial appeal of the trial court's denial of his motion to remove appellee was dismissed for lack of a final appealable order in *Longo.* This conclusion was premised upon the recognition that other issues were pending before the trial court at the time and appellant would be able to obtain appropriate relief in a later appeal from a final judgment. *Longo I* at ¶19. Appellant and Joy, however, entered into a settlement agreement pertaining to the remaining issues in

4

the custody proceeding. The agreement was reduced to an agreed judgment on September 7, 2012, which settled all outstanding issues relating to the custody of the children and expressly stated appellee's services as GAL were terminated as of that date. The appointment of appellee as GAL was a function of issues relating to custody of appellant's and Joy's children.

{¶11} A settlement agreement is a form of a contract entered to terminate existing claims thereby ending litigation. *Mentor v. Molk*, 11th Dist. Lake No. 2012-L-138, 2013-Ohio-3975, ¶7. In *Molk*, this court emphasized:

> {¶12} "A party to a consent decree or other judgment entered by consent may not appeal unless it explicitly reserves the right to appeal. The purpose of a consent judgment is to resolve a dispute without further litigation, and so would be defeated or at least impaired by an appeal. The presumption, therefore, is that the consent operates as a waiver of the right to appeal. It is because the parties should not be left guessing about the finality and hence efficacy of the settlement that any reservation of a right to appeal should be explicit." *Id.* at ¶8, quoting *Assn. of Community Orgs. For Reform Now v. Edgar*, 99 F.3d 261, 262 (7th Cir.1996).

{¶13} In light of the trial court's denial of appellant's motion to remove, appellee remained GAL and continued to serve in that capacity, doing work until appellant and Joy voluntarily entered their settlement agreement. With the exception of the issue of GAL fees, the settlement agreement did not reserve a right to appeal any particular issue. Moreover, the settlement specifically stated that all prior orders of the court "shall

5

remain in full force and effect." Thus, the prior order denying appellant's motion to remove the GAL remained operative and, without reservation to appeal that issue, the settlement rendered any underlying issues relating to the custody matter moot and waived appellant's right to appeal any of those issues.

{¶14} Had appellant and Joy decided to continue the litigation and appellant received an adverse judgment, he could have appealed the denial of his motion along with any other issues attendant to that judgment. When the matter was settled, however, the custody litigation and any issues internal to those proceedings were terminated. We therefore hold appellant's agreement to the terms of the settlement operated to waive any previous issues relating to the custody proceedings, including the denial of his motion to remove appellee as GAL.

{¶15} Appellant's first assignment of error is without merit.

{¶16} Appellant's second assignment of error provides:

{¶17} "The trial court abused its discretion by awarding fees to the guardian ad litem, Jeffery Orndorff, where the uncontroverted and overwhelming evidence clearly established that the fee amount requested was clearly excessive in light of the circumstances of the case."

{¶18} When evaluating an order for compensation to a guardian ad litem, a reviewing court shall consider whether the trial court abused its discretion. *Bayus v. Bayus*, 11th Dist. Trumbull No. 2011-T-0062, 2012-Ohio-1462, ¶15, citing *Davis v. Davis*, 55 Ohio App.3d 196, 200 (8th Dist.1988). The phrase "abuse of discretion" is one of art; it connotes judgment exercised in a manner that comports with neither

6

reason nor the record. *In re V.M.B.*, 11th Dist. Portage No. 2012-P-0112, 2013-Ohio-4298, ¶26.

**{¶19}** Appellant's second assignment of error asserts appellee's GAL bill was clearly excessive. Appellant takes issue with specific aspects of the GAL fee bill. Specifically, appellant first asserts the bill is improper because it includes 19 calls for 9.7 hours of time to Joy, yet includes no billing for phone calls to appellant. In appellant's view, this demonstrates his fees do not reflect a fair representation of the children as it demonstrates appellee was unwilling to approach both parents to ascertain the children's best interests. We do not agree.

**{¶20}** The record demonstrates that, after appellee issued his initial report in August 2009, appellant became adversarial toward appellee. As the parties left the court house, appellee was speaking with Joy. Appellant confronted appellee and advised him: "Just to let you know, Jeff, you are f _ _ _ _ _ _ with the wrong guy." Later, in January 2010, appellant advised appellee he would no longer be paying his fees. Then, in March 2010, appellant sought an order removing appellee as GAL.

**{¶21}** Following a hearing on that motion, the magistrate determined between August 2009 to August 2012, appellee spoke on the phone only twice; however, dozens of written communications were exchanged between appellee, appellant, Joy, and other individuals to assist appellee in discharging his duties as GAL. The magistrate found that appellant disagreed vehemently with appellee's findings, opinions, and recommendations. Nevertheless, the magistrate determined that appellant advanced no credible evidence that appellee failed to act in the best interests of the children. And,

he further found, appellee's services were reasonably necessary, under the contentious circumstances of the case, to discharge his duties as GAL.

**{¶22}** With the foregoing points in mind, it is reasonable to conclude that, even though appellee spoke on the phone more with Joy, he still communicated with appellant, among other individuals, in writing. And, given the record, it is also reasonable to conclude that appellee's lack of phone communication with appellant may have been premised upon appellant's less than amicable posture he took toward appellee after the initial GAL report was filed. Nevertheless, the fee statement demonstrates appellee communicated regularly with individuals relevant to his work as GAL. As a result, we fail to see how his 19 phone calls with Joy over the three-year period rendered him incapable of fairly and objectively ascertaining the best interests of the children. Thus, we conclude the fees billed for the 19 phone calls were reasonable vis-à-vis appellee's role as GAL.

**{¶23}** Appellant next asserts appellant spent 5.2 hours reviewing e-mails exchanged on 20 separate occasions between appellant and Joy. Although appellant recognizes it is necessary for a GAL in a custody case to be aware of the interactions of parents, he alleges appellee was unnecessarily "delv[ing] into the divorce proceedings." He therefore maintains that reading these e-mail exchanges were unnecessary to make an informed recommendation regarding the children's best interests. Again, we do not agree.

**{¶24}** Appellant's argument is premised upon speculation. Nowhere does the record suggest appellee was interested in appellant's and Joy's personal relationship *except* to discharge his duty to ascertain the children's best interests. To make a

recommendation relating to children's best interests, it would be necessary for a GAL to observe, whether in person, teleconference, or via e-mail, the general dynamic of the relationship between the parents. In doing so, a GAL can familiarize him/herself with any potential problems the parents might have amongst themselves or individually that might impact the children's best interests. Appellant appears to concede this. We therefore conclude the hours billed for reviewing the e-mails were reasonable and within the scope of appellee's duties.

{¶25} Next, appellant argues that appellee failed to keep accurate records and failed to file an itemized statement and accounting with the court, in violation of Sup.R. 48(D)(17). Appellant, however, fails to support this statement with any specific argument. The final, itemized bill was filed with the motion for outstanding fees; appellee later filed an itemized statement prior to a hearing on the motion which included additional hours he incurred accumulating documentation relating to his services at the request of appellant. Nothing, other than appellant's ipse dixit allegations, suggests that the itemized statement is inaccurate or misleading. A GAL's primary duty is to investigate a child's situation and request a court to act in accordance with the child's best interests. *In re Baby Girl Baxter*, 17 Ohio St.3d 229 (1985). The statement offered by appellee purports to establish the time spent working in accordance with this general duty. The statement was filed in accordance with Sup.R. 48 and appellant has failed to establish it was inaccurate or fraudulent.

{¶26} Appellant finally asserts that the trial court did not afford him the opportunity to challenge the basis of appellee's fees; instead, he claims the trial court

9

focused upon appellant's character, rather than appellee's billing statement supporting the fees. We do not agree.

{¶27} At the hearing on the fees, there is no evidence the magistrate assailed appellant's character. The magistrate presided impartially over the case, received evidence, ruled on objections, and asked relevant questions when necessary. Appellant was given the opportunity to specifically challenge the fees. He did not, however, attack, with any particularity, the fees appellee was requesting. For the most part, appellant contested appellee's compliance with GAL duties, as set forth by rule and statute, and attempted to establish appellant was biased, engaged in fraudulent misrepresentation, and was generally incompetent to serve as GAL. Appellant was given an opportunity to be heard and the court did not compromise this opportunity. Instead, in his decision, the magistrate observed:

{¶28} The parties never tried this case. They settled it. Plaintiff never attacked the Guardian's recommendations in the course of a full hearing on the merits. The Court never had the opportunity to hear the guardian's testimony and whatever evidence Plaintiff might have offered, either to rebut the Guardian's conclusions and recommendations or to support Plaintiff's own view of the issues. The Court has before it only the Guardian's unrebutted testimony that he performed the services his invoice describes, and that in so doing[,] he acted in and represented the best interest of the parties' children. The mere fact that Plaintiff disagrees with the Guardian's

10

conclusions and recommendations does not mean that the Guardian failed to perform his duties.

{¶29} We acknowledge the fees requested were significant; a review of the fee statement, however, facially demonstrates that appellee provided services relating to the case for the time accounted. Appellant requested the GAL and the parties agreed to the hourly rate at which the GAL would be compensated. The custody proceedings appeared to be somewhat acrimonious until the settlement was entered. Accordingly, without some evidence to refute or otherwise rebut the fee statement, we conclude the magistrate was correct in awarding the fees in this case. Therefore, given the limited and speculative nature of the challenges appellant advances on appeal, as well as the relatively thorough fee statement submitted into evidence by appellee, we conclude the trial court did not abuse its discretion in awarding appellee the fees he requested.

{¶30} Appellant's second assignment of error lacks merit.

{¶31} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶32} This writer finds no fault in the GAL's performance based upon existing law. The essence of Father's complaint is his inability under the existing law to challenge effectively the actions, conclusions or fees of a court-appointed guardian ad

11

litem. According to Father, the guardian's opinion trumps that of the child and the child in effect becomes an object without voice or self-determination.

{¶33} The present GAL model is essentially flawed and the literature is ripe with support for the abolition of this model. It does not give a child a voice in proceedings.[1] Under the existing rules in Ohio, a guardian ad litem is immune from malpractice, malfeasance and essentially unaccountable (legally or financially) to the litigants. A guardian ad litem's purpose is to give some sort of lay/expert opinion to the court of his/her idea of "best interest of the child." This subjective opinion, usually made by someone without any psychological training, often leads to a custody determination with little regard for the preference of the child. This is absurd.

{¶34} The guardian is well compensated at an hourly rate by the parties, per court order, and the parties are liable to a threat of contempt if the fees are not satisfied. The system lacks a set of objective criteria to guide the family, the court, the mental health professionals and the guardian. This model is not conducive to determining the best interest of the child.

{¶35} The guardian ad litem is only accountable to the judge. The rules are so broad, and afford so much discretion, that there is effectively no criteria for determining if the guardian ad litem is truly representing the best interest of the child or inappropriately discounting a child's preference. Absent from the statutes and case law are clear definitions of the rights of a child in a custody dispute. Ohio law is antiquated and replete with examples of children being treated as less-than-equal citizens. The

---

1. Neely, *The Primary Caretaker Parent Rule: Child Custody and the Dynamics of Greed*, 3 Yale L. & Policy Rev. 168 (1984); Cahn, *Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions*, 44 Vand. L. Rev. 1041 (1991); Federle, *Chidren's Rights and the Need for Protection*, 34 Fam. L.Q. 421 (2000).

case law denies them basic rights based upon their vulnerability as a means of protecting them. *In re A.G.,* 139 Ohio St.3d 572, 2014-Ohio-2597, ¶61. This defies logic as vulnerable populations deserve more rights – not less.

**{¶36}** Many families and children are held hostage, financially and emotionally, in the limbo of a broken domestic litigation cottage industry. Short of a constitutional challenge and extensive work by the legislature, determining the rights of children to be treated equally as parties and participants in domestic litigation, this writer does not find a remedy to address the structural deficiencies brought to light in Father's appeal. The few tools available to appellate courts in reviewing these cases, are an abuse of discretion standard; an anemic statute (R.C. 3109.04(B)); and Sup.R. 48. None of these tools give this court, nor families in distress, a solution, as they are completely subjective and do not provide a definitive remedy.

**{¶37}** Therefore, I reluctantly concur.